UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BILLINGS,

        Plaintiff,                               Hon. Robert J. Jonker

v.                                             Case No. 1:17-cv-775

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (PageID.236). He successfully completed high school and worked previously as an administrative clerk, lawn maintenance worker, mill operator, machine operator, and motor vehicle assembler. (PageID.67-68). Plaintiff applied for benefits on June 19, 2015, alleging that he had been disabled since May 23, 2015, due to a stroke, inability to use his right hand, speech and walking difficulties, and a heart defect. (PageID.236-45, 263).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.109-232). On March 9, 2017, Plaintiff appeared before ALJ Paul Jones with testimony being offered by Plaintiff and a vocational expert. (PageID.74-107). In a written decision dated March 23, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.62-69). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.45-49). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from cerebrovascular (CVA) residuals and hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.64-66). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he requires a sit/stand

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

option, at will; (2) he can occasionally handle and finger with his right hand; and (3) he can have only occasional exposure to hazards. (PageID.66).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 230,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.96-107). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

**I.      The ALJ's Assessment of Dr. Safdar's Opinions**

On March 1, 2017, Dr. Adnan Safdar completed a Medical Source Statement regarding Plaintiff's functional abilities. (PageID.550-51). The doctor did not articulate any

specific functional limitations for Plaintiff, but instead merely checked boxes on a pre-printed two-page form. Moreover, certain of the doctor's responses are inconsistent. Nevertheless, the ALJ interpreted the form as articulating the opinions that Plaintiff requires a cane to balance, stand, and ambulate and can only occasionally perform handing and fingering activities with his right upper extremity. The ALJ afforded only "partial weight" to these opinions. (PageID.67). Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to provide good reasons for affording less than controlling weight to the opinions of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human*

*Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ considers the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

First, the form which Dr. Safdar completed fails to articulate any specific functional limitations from which Plaintiff allegedly suffers. Thus, the form in question does not constitute a "medical opinion" to which any deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly rejected such). As noted above, however, despite these shortcomings the ALJ interpreted the form as articulating the opinions that Plaintiff requires a cane to balance, stand, and ambulate and can only occasionally perform handing and fingering activities with his right upper extremity. As the administrative record reveals, this determination is supported by substantial evidence.

On May 27, 2015, Plaintiff reported experiencing dizziness with difficulty standing and walking. (PageID.309). Plaintiff reported that he began experiencing these symptoms the previous weekend. (PageID.309). The results of a physical examination were unremarkable. (PageID.310). A neurological examination revealed the following:

> Alert. Oriented x3. Mood/affect normal. Speech normal. No facial weakness. Finger-nose test severely abnormal on the right. Abnormal gait due to mild ataxia (lists to the right). No weakness. No sensory deficit. Reflexes normal. No pronator drift.

(PageID.310).

Plaintiff was transferred to Sparrow Hospital where he was diagnosed as having experienced a "definite infarct [of the] right cerebellum" with "no blockage, no dissection, [and] no bleed." (PageID.321-35). An examination later that day revealed no motor, muscle, or

sensory deficiency and "normal gait and station." (PageID.335-39). Plaintiff was discharged from the hospital two days later. (PageID.321-22).

On June 26, 2015, Plaintiff participated in a transesophageal echocardiogram examination the results of which "unremarkable. . .except for a small patent foramen ovale (PFO) and a positive bubble study."[2] (PageID.394-95). On June 29, 2015, Plaintiff's PFO was repaired via cardiac catheterization. (PageID.414-16). On July 15, 2015, Plaintiff reported that he was not experiencing headaches, dizziness, or fainting. (PageID.494-95). Plaintiff exhibited "normal gait and station" and the results of a physical examination were unremarkable. (PageID.494-95). Treatment notes dated October 6, 2015, indicate that Plaintiff "has done well" following his PFO repair without subsequent cardiovascular symptoms. (PageID.500-03). Plaintiff did report, however, that he was experiencing balance issues, fatigue, and shortness of breath. (PageID.500-04). On November 6, 2015, Plaintiff reported that he was experiencing dizziness. (PageID.537-41).

On November 14, 2015, Plaintiff was examined by Dr. Mohammed Khaleel. (PageID.529-33). Plaintiff walked "with a slight limp on the right," but was able to "heel and toe walk without any difficulty." (PageID.530). Plaintiff did not need a cane to ambulate. (PageID.530). Plaintiff exhibited 5/5 muscle strength throughout with "intact" sensation and digital dexterity. (PageID.530). Plaintiff also "denie[d] any difficulty with fine or gross motor dexterity including opening jars, buttoning clothing, writing legibly, picking up coins, or tying

---

[2] A Patent Foramen Ovale (PFO) is "a hole in the heart that didn't close the way it should after birth." *See* Patent Foramen Ovale, available at https://www.mayoclinic.org/diseases-conditions/patent-foramen-ovale/symptoms-causes/syc-20353487 (last visited on July 16, 2018). "Most people with a patent foramen ovale don't know they have it, because it's usually a hidden condition that doesn't create signs or symptoms." *Id.* "However, in some cases, small blood clots in the heart may move through a patent foramen ovale, travel to the brain and cause a stroke." *Id.* A bubble study assesses "the flow of blood through the heart" and "is often performed when a patent foramen ovale (PFO) is suspected." *See* The "Bubble Study" for PFO, available at https://www.verywellhealth.com/bubble-study-1746117 (last visited on July 16, 2018).

shoelaces." (PageID.530-31). The results of an orthopedic examination were unremarkable with Plaintiff exhibiting "full range of motion throughout." (PageID.531). Plaintiff's grip strength was measured as 44.9 kilograms on the left and 36.9 kilograms on the right. (PageID.532).

On December 2, 2016, Plaintiff reported to Dr. Safdar that his symptoms were improving. (PageID.535-36). The doctor noted that Plaintiff did not require rehabilitation services. (PageID.536). The results of an examination were unremarkable and the doctor did not report that Plaintiff required a cane to ambulate or was experiencing limitation in his ability to use his right upper extremity. (PageID.535-36). At the administrative hearing, Plaintiff testified that he possesses a valid driver's license and drives a motor vehicle. (PageID.82-83).

The ALJ interpreted the form which Dr. Safdar completed as articulating the opinions that Plaintiff requires a cane to balance, stand, and ambulate and can only occasionally perform handing and fingering activities with his right upper extremity. This latter restriction is incorporated into the ALJ's RFC assessment. The question, therefore, is whether the ALJ articulated good reasons for discounting the opinion that Plaintiff requires a cane to balance, stand, ambulate. As the ALJ recognized, the medical evidence simply fails to support this opinion. Likewise, as the ALJ noted, Plaintiff's testimony that he continues to drive a motor vehicle "is not indicative of someone with dizziness." (PageID.67). In sum, the ALJ articulated good reasons, supported by substantial evidence, for discounting Dr. Safdar's opinions. Accordingly, this argument is rejected.

**II.       The ALJ's Assessment of Plaintiff's Symptoms**

At the administrative hearing, Plaintiff testified that he was unable to work because he tires quickly which causes him to become dizzy. (PageID.93). Plaintiff further testified that

he has "lost my coordination in my right hand." (PageID.99). According to Plaintiff, his right upper extremity is functionally useless. (PageID.99-101). The ALJ discounted Plaintiff's testimony, however, on the ground that it was "not entirely consistent with" the evidence of record. Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ failed to take into consideration all the relevant evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[3]

---

[3] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting

---

courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The medical record in this case was not extensive and the ALJ discussed such at length. Plaintiff nevertheless argues that the ALJ failed to discuss and consider the following impairments: multiple bone fractures, rotator cuff repair, multiple strokes, and the removal of cancerous lesions from his neck. This argument is unpersuasive. First, the record does not reveal that Plaintiff suffered multiple strokes. As Plaintiff's attorney stated at the administrative hearing, "the only [stroke] that was documented was from May of 2015." (PageID.93). As for the other impairments identified above, Plaintiff has not alleged that he is disabled as a result of such impairments. Moreover, Plaintiff has failed to identify any portion of the administrative record which contains evidence of such impairments. As Defendant correctly notes, it is Plaintiff's responsibility to present evidence of his alleged impairments. *See, e.g., Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003) (plaintiff bears "the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits"); 20 C.F.R. §§ 404.1512 and 404.1514 (it is the claimant's responsibility to provide the evidence necessary to evaluate her claim for benefits); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so").

As for Plaintiff's argument that the ALJ failed to articulate why he discounted Plaintiff's subjective allegations, such is unpersuasive. In support of this aspect of his decision, the ALJ stated:

> Claimant's severe fatigue, severe dizziness and physical limitations are not consistent with or supported by the medical reports. In June 2015, a cardiac catheterization revealed no evidence of obstructive coronary artery disease (Exhibit 6F). Claimant stated he needs the cane for walking, balancing and standing but in November 2015, Dr. Khaleel stated he did not use the cane during the physical examination. He reported that claimant could heel and toe walk without any difficulty and had only a slight limp on the right. Claimant testified he had difficulties using his right hand but reported to Dr. Khaleel that he had no difficulty with fine or gross motor dexterity including opening jars, buttoning clothing, writing legibly, picking up or coins or tying shoelaces. Dr. Khaleel stated that claimant had intact digital dexterity (Exhibit 8F). Claimant denied having dizziness to his neurologist (Exhibit I IF). Claimant testified he drives, which is not indicative of someone with dizziness.

(PageID.67).

The ALJ's rationale is consistent with the record and constitutes an adequate justification for discounting Plaintiff's subjective allegations. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Dated: August 9, 2018                              /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                U.S. Magistrate Judge